COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-435-CR

 

 

BRADY C. DILLARD                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 5 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction








Appellant Brady C. Dillard appeals his conviction
for two counts of evading arrest.  The
trial court found him guilty and sentenced him to 120 days=
confinement in accordance with a plea bargain offer.  In two issues, Dillard contends that the
evidence is legally and factually insufficient to support his conviction and
that his trial counsel provided ineffective assistance by failing to call him
to testify.  We will affirm.

II.  Factual and Procedural Background

Officers with the Dallas Police Department
responded on July 7, 2004 to a report of a burglary at an apartment and
discovered marijuana growing in the apartment. 
Six to eight officers were present at the scene; marked squad cars were
parked in the apartment complex=s
parking lot.  At approximately 2:45 a.m.
on July 8, 2004, one of the investigating officers in the apartment, Officer
Matthew Meltabarger, heard a knock at the apartment=s front
door.  Officer Meltabarger opened the
door and saw Dillard and another man, Shawn Slover. Officer Meltabarger
testified that he was surprised anyone would approach the apartment because of
the police presence in the apartment and in the parking lot.  Officer Meltabarger said, AYou guys
really want to be here?@ but then told the men to
stop.  Slover stopped, but Dillard
ran.  Officer Meltabarger testified that
he yelled, AStop, police,@ and
gave chase.  Sergeant Doug Chaney joined
the pursuit.  As he ran after Dillard,
Officer Meltabarger said he yelled, AStop, police,@ several
more times.  Eventually Dillard was
apprehended.  

The trial court found Dillard guilty of two
counts of evading arrest and sentenced Dillard to 120 days in jail.  This appeal followed.

 








III.  Sufficiency of the Evidence

In his second issue, Dillard contends that the
evidence is legally and factually insufficient to support his conviction for
evading arrest.  The legal and factual
sufficiency standards of review are well settled;[2]
Dillard and the State agree on the standards we are to apply.  We therefore do not repeat those standards
here.  A person commits the offense of
evading arrest if he intentionally flees from a person he knows is a peace
officer attempting lawfully to arrest or detain him.  Tex.
Penal Code Ann. ' 38.04(a) (Vernon 2003).  Intent may be inferred from any facts which
tend to prove its existence, including the acts, words, and conduct of the
accused.  Manrique v. State, 994
S.W.2d 640, 649 (Tex. Crim. App. 1999).








Dillard first challenges the sufficiency of the
evidence to establish that he knew that the men pursuing him were in fact
police officers.  The testimony on this
issue was disputed.  Officer Meltabarger
and Sergeant Chaney both testified that they were wearing jackets with the word
Apolice@ printed
in big letters on the back of their jacket and that they both yelled, AStop,
police,@ as
Dillard ran.  Additionally, Officer
Meltabarger testified that half of the other six or eight officers at the scene
were in full uniform and that there were marked squad cars in the apartment
complex=s
parking lot.  Slover testified, however,
that as he and Dillard approached the apartment=s front
door someone peered out and said, AGo, go
on; get out of here.@ 
Slover testified that he did not hear anyone yell Apolice.@  He said that Officer Meltabarger was wearing
a Avest@ that
had the word Apolice@ written
on it, that he Asaw that tiny, little patch on
his vest,@ and that it was Ahard to
miss@ the
word Apolice@ on his Avest.@[3] Slover
admitted that he saw two officers in the apartment wearing wind breakers
emblazoned in yellow with the word Apolice,@ but he
indicated that Dillard was not as close as he was to the apartment=s front
door, implying that Dillard did not see the police officers= jackets.  But the trial court, as the trier of fact,
was free to resolve these conflicts in the evidence in favor of the officers=
testimony.  See Zuniga, 144 S.W.3d
at 481 (the trier of fact is free to weigh the contradictory evidence and
resolve all conflicts by believing all, some, or none of a witness=s
testimony).








Dillard next challenges the sufficiency of the
evidence to show that Officer Meltabarger was attempting to Alawfully
detain@
him.  Dillard contends that because
Officer Meltabarger conceded on cross-examination that his question to Dillard
and SloverCADo you
guys really want to be here?@Ccould be
construed as an invitation to leave, the evidence is insufficient to show an
attempt to lawfully detain him. 

Consistent with
the Fourth Amendment, a police officer may briefly stop a suspicious individual
in order to determine his identity or to maintain the status quo momentarily
while obtaining more information.  Hoag
v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific articulable facts
that lead him to conclude that the person is, has been, or soon will be engaged
in criminal activity.  Woods v. State,
956 S.W.2d 33, 38 (Tex. Crim. App. 1997).








Here, during a burglary investigation at an
apartment, officers discovered numerous marijuana plants and hydroponic grow
lights.  The officers had detained the
apartment=s owner when, at approximately
2:45 a.m., Dillard and Slover approached the apartment=s front
door.  Officer Meltabarger said that he
wanted to determine why Dillard came to the apartment, but Dillard ran. Dillard=s
arrival at the apartment at 2:45 a.m., the fact that marijuana was being grown
in the apartment, and Dillard=s
subsequent flight from the officer who met him at the door created a reasonable
suspicion that Dillard might be coming to the apartment to purchase
marijuana.  See Salazar v. State,
893 S.W.2d 138, 141 (Tex. App.CHouston
[1st Dist.] 1995, pet. ref=d,
untimely filed) (stating that flight from a show of authority may be a factor
in support of a finding of reasonable suspicion).  Thus, Officer Meltabarger was authorized to
conduct an investigative detention and was attempting to do so by telling the
men to stop when Dillard continued to flee.








Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found that
Dillard intentionally fled from a person he knew to be a peace officer who was
attempting lawfully to detain him.  See
Tex. Penal Code Ann. '
38.04(a); Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Pickens v.
State, 159 S.W.3d 272, 274 (Tex. App.CAmarillo
2005, no pet.) (holding that jury had before it sufficient evidence to
rationally conclude, beyond reasonable doubt, that the eventual stop was
lawful; thus, supporting conviction for evading arrest).  Furthermore, viewing all the evidence in a
neutral light, favoring neither party, we also conclude that the evidence
supporting the verdict, taken alone, is not too weak to support the finding
that Dillard intentionally fled from a person he knew to be a peace officer who
was attempting lawfully to detain him.  Dotson
v. State, 146 S.W.3d 285, 295 (Tex. App.CFort
Worth 2004, pet. ref=d); Pickens, 159 S.W.3d
at 274 (holding that evidence was neither weak nor overwhelmed by any
contradictory evidence; thus, supporting conviction for evading arrest).  Accordingly, we hold that the evidence is
both legally and factually sufficient to support Dillard=s
convictions for evading arrest.  We
overrule Dillard=s second issue.

IV.  Effective Assistance of Counsel

In his first issue, Dillard argues that his trial
counsel rendered ineffective assistance of counsel because he failed to call
Dillard to testify.  After the trial
court found Dillard guilty of two counts of evading arrest,  Dillard stated that he wished he Acould
just tell [his] part of the story.@  The trial court explained that Dillard could
have testified if he had chosen to do so, but stated that the trial court=s
understanding was that Dillard had chosen not to testify. 








To establish ineffective assistance of counsel,
appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).  In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  To overcome the presumption of reasonable
professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Salinas, 163 S.W.3d at 740 (quoting Thompson,
9 S.W.3d at 813).  The second prong of Strickland
requires a showing that counsel's errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.  In other words, appellant
must show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068.

Here, a post-trial hearing reflects the following
exchange:

THE COURT: . . . Mr. Dillard, it appears that your attorney has filed
a motion to withdraw and arrest of judgment. 
Are you aware of that?

 

DEFENDANT: Yes, sir.

 

THE COURT: Do you want your attorney to withdraw?








DEFENDANT: Yes, sir.

 

THE COURT: Why?

 

DEFENDANT: Because of notB

 

[DEFENSE COUNSEL:] You can say it. 
You=re not going to hurt
anybody=s feelings.  You need to protect yourself at this point.

 

DEFENDANT: I guess, negligence.

 

THE COURT: You say Ms. McCary was negligent?

 

DEFENDANT: Yes, because I didn=t get to go up and testify on my part.

 

THE COURT: Well, did you discuss that with her before the trial was
over with?

 

DEFENDANT: Yes.  And she said
she was pretty confident about the trial.

 

REPORTER: She was what?

 

DEFENDANT: Confident.

 

THE COURT: Is that what you said, Ms. McCary?

 

[DEFENSE COUNSEL:] At the time that he had requested to testify, it
was the State=s closing argument, so I
think case law dictates that after both sides rest and close, that I could not
present him at that time.  But we had
both made the joint decision to testify or not testify prior to that.  We had discussed it in our office meetings
and during trial. 

 

Thereafter, the trial court appointed new counsel for Dillard. 








Thus, the record before us does not affirmatively
demonstrate any ineffectiveness by Dillard=s trial
counsel.  Instead, the record reflects
that prior to trial and during trial, Dillard=s trial
counsel discussed Dillard=s right to testify with him and
that Dillard chose not to testify. 
Consequently, the record reflects Dillard=s counsel=s
compliance with prevailing professional norms by explaining to Dillard his
right to testify, discussing with him whether to exercise that right, and
respecting his decision on the issue.  See
Johnson v. State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (agreeing with
majority of jurisdictions that defense counsel shoulders the primary
responsibility to inform the defendant of his right to testify, including the
fact that the ultimate decision belongs to defendant), cert. denied, 126
S. Ct. 1355 (2006); Salinas, 163 S.W.3d at 740.  Dillard did not express on the record his
purported desire to testify until after the trial court found him guilty; the
record likewise does not link Dillard=s delay
in expressing this wish to any fault of his counsel.  Based on the record before us, Dillard has
failed to meet the first prong of Strickland.








And we agree with the State that, even assuming
Dillard did meet Strickland=s first
prong, he clearly failed to meet the second prong because the record does not
show what his testimony would have been or how it might have aided in his
defense or produced a different outcome. 
See Johnson, 169 S.W.3d at 239 (holding Strickland=s first
prong was met when record showed trial counsel=s
failure to inform appellant of his right to testify but Strickland=s second
prong was not met when appellant failed to show that there was a reasonable
probability that the outcome would have been different had he testified).  Therefore, we hold that Dillard has failed to
establish that his trial counsel provided ineffective assistance.  We overrule Dillard=s first
issue.

V.  Conclusion

Having overruled both of Dillard=s
issues, we affirm the trial court=s
judgment.

 

 

PER
CURIAM

 

PANEL F:    WALKER, J.; CAYCE, C.J.; and MCCOY, J.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: May 11, 2006











[1]See Tex. R. App. P. 47.4.





[2]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979) (setting forth legal sufficiency standard of review); Hampton
v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (same); see Zuniga
v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004) (setting forth factual
sufficiency standard of review).





[3]Officer Meltabarger said
he was not wearing a vest, he was wearing a black jacket with a white Dallas
police badge on his left breast, the word Apolice@ down both arms, and ADallas Police@ in bold white lettering
on the back.